KATIE COUNTRYMAN, APPELLEE, v. R. B. RONSPIES, APPELLANT.

141 N. W. 2d 425

Filed April 1, 1966. No. 36119.

Deutsch & Hagen and William E. Webster, for appellant.

Brogan & Monen, for appellee.

Heard before CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ., and KOKJER, District Judge.

KOKJER, District Judge.

This is an action instituted by the plaintiff against the defendant to recover damages claimed to have been sustained by her on October 21, 1962, at about 6:35 p.m., when defendant's Hereford cow came suddenly into her lane of traffic as she was driving north on U.S. Highway No. 81, causing a collision with other cars. Defendant's motion for directed verdict was overruled and the case was submitted to the jury which returned a verdict for plaintiff. Defendant's subsequent motion for a judgment in his favor notwithstanding the verdict or, in the alternative, for a new trial was overruled and defendant appealed. We find that the case was properly submitted to the jury and that its verdict, based upon conflicting evidence, and the judgment entered thereon should be sustained.

Defendant assigns error to the district court on the grounds, among others, that his motion for directed ver-

dict should have been sustained; that the verdict and judgment are contrary to the law and the evidence; and that a judgment in his favor notwithstanding the verdict should have been rendered.

If reasonable minds could have drawn different conclusions as to whether or not acts of negligence charged were proved, the law required that the case be submitted to the jury; and the law also required that every controverted question of fact be resolved in favor of the plaintiff against whom the motion was made, and that she was to have the benefit of every inference which could be reasonably derived from the evidence. These rules require a review of the evidence.

There was evidence that defendant lived on the southeast quarter of a section where his home and buildings were located. A short distance north of his home was a pasture in which were four cows. The defendant's Hereford cow involved in the accident was, according to defendant's testimony, in this pasture in the afternoon and he had seen her there at about 6:15 p.m., when he returned home from a trip to the home of his son, Eugene. On cross-examination he admitted he had been asked, when a deposition was taken on March 6, 1965, this question: "When was the last time you saw the cattle on October 21, 1962?" And that he had replied: "It must have been about 3:00, 4:00 o'clock." The calf of the Hereford cow involved had been taken from her and was locked in the barn near the house. He said it was 9 months old and that the cow had not been bawling to get to it.

Defendant also owned the west half of the section immediately east from his home, across U. S. Highway No. 81. He rented this to his son, Eugene. There was a pasture on this half section which was east of an unfenced area referred to as "idle acres." Both defendant and Eugene had cattle in this pasture. They were Shorthorns and red white-face cattle. Defendant testified it was his duty to maintain the fences on these two farms

but that Eugene helped. Defendant said that none of his cattle had been out and the only time any had been on the highway was in 1957 or 1958 when a bull he had loaned to Eugene broke out at Eugene's place in the next section north of defendants. He said that if any cattle were out they were probably Behnkes. He stated on cross-examination that Behnke's cattle were Black Angus. He stated the nearest person that owned cattle other than Behnke would be 1½ or 2 miles from his place, except for those owned by his son, Eugene.

Mr. Joseph C. Maly, a rural letter carrier from Crofton, Nebraska, testified that he left home between 8 and 9 o'clock on the morning of October 21, 1962, and drove to Norfolk. Over the first hill north of the Ronspies place he saw some six or eight cows, roan and red, close to and on the east side of the highway. He also said they might have been Herefords as they were red. He drove into the Ronspies place and told a young man about the cattle being out close to the highway. The young man said they were theirs and the witness drove on. In the evening, somewhere around 5 or 5:30 o'clock, he again passed the Ronspies place and, about the same distance north, two or three cows were out between the pasture fence and the highway—one or two roans and a red one or one or two red ones and a roan. He just drove on because he figured if they had put them in in the morning, they would more than likely go and look again in the evening to see if they stayed in. Mrs. Theresa Maly was with her husband on this trip. Her testimony was similar to his. She was not so sure of the color of the cows, thought they were mixed, some white faces and a couple of roans. The young man said they would take care of them. Both of these witnesses testified that defendant was not the man they talked to. It was a younger man.

Mr. Bert McKibbon, a farmer living near Bloomfield, Nebraska, with his wife, drove on U. S. Highway No. 81 past the Ronspies place on October 21, 1962, around

10:30 or 10:45 in the morning. He testified that he saw, "two—some cattle," in the ditch on the east side of the highway north of the driveway into the Ronspies place. They were Herefords and were on the south side of the knoll or hill, between the knoll and the Ronspies driveway. They were still there when he returned sometime after 4 p.m., on his way home; and one started up on the grade, so he slowed up.

None of these witnesses knew who owned the cattle. It was admitted by defendant that the cow which was killed in the accident was his. The other cattle were on defendant's land. The young man at the Ronspies place informed the witnesses Maly that the cattle which were out were theirs. Except for Behnke's Black Angus cattle, it was some distance to other owners of cattle.

The only people living on the Ronspies farm were defendant, his wife, and his two sons Dennis and Wilfred. These two sons were not engaged in farming but sold machinery which they kept in an area close to the highway near the house. Some one of these was always at home, and the one who was there was in charge. On the day in question, which was a Sunday, they went to church at different hours so at least one of them was at home. No other person was there during the day. The defendant and his sons flatly denied that any cattle were known by them to be out and that no one came into the yard and informed any of them that any cattle were out.

An inference may be drawn, largely from testimony of disinterested witnesses, that defendant's cattle were out; that he knew, or should have known about it; and that he made no effort to round them up and confine them. There was evidence from which reasonable minds might draw different conclusions as to whether or not defendant was negligent, and it would have been error to direct a verdict for the defendant.

Defendant claimed that no cattle of his had ever been hit by a car except the bull earlier referred to. Mr.

Wilbur Ekdahl testified on rebuttal that he lives in Wausa, Nebraska, where he runs the Gamble Store. In July 1957, he was driving on U. S. Highway No. 81 past the Ronspies place at about 9 o'clock p.m., when a cow ran out of the ditch in front of his car and he hit it. This was a very short distance, 30 to 40 feet, north of the Ronspies drive, and the critter ran up the driveway to the barn. He stated that he had not run into a bull about a mile north at any time; and that the animal he hit was not killed. He testified that his car was disabled in the accident; and that, as soon as the car stopped, there was a young man right beside it, pretty soon more people came, and someone called a patrolman who came and did some checking. He testified that one of the boys—he thought it was Dennis—was the one beside his car; and that Dennis had said they saw from the window, by passing car lights, a critter on the road, he had gone down the driveway to get it, was standing at the edge of the driveway as witness' car was coming from the south, and decided to wait until it went by and chase the critter back but the critter met Dennis first. The witness also said he definitely saw Wilfred because after the car had been pulled up on the place, Wilfred took the witness and his wife home to Wausa.

Wilfred then testified that he could remember taking Mr. Ekdahl and his wife home but did not remember about the cow or whether it was a bull or a cow, or anything else about the accident. Dennis was asked if he knew anything about the episode and said, "I don't remember anything like that." He was asked if it ever occurred, and replied, "I don't know it it did or not. I don't remember it if it did." Defendant testified that no cow owned by him was ever struck as testified to by witness Ekdahl.

There was evidence to support plaintiff's claim that the accident was caused by the cow coming suddenly into her lane of traffic just ahead of her. The issue of contributory negligence was properly submitted to the

jury upon the evidence adduced. It determined these issues in favor of plaintiff. A verdict of a jury in a law action, based upon conflicting evidence, will not be disturbed on appeal unless it is clearly wrong.

Error is claimed in the giving of instruction No. 8 and the refusal to give instructions Nos. 2 and 3 requested by defendant. The instructions given by the court have been examined and found to correctly and fully reflect the law involved. Defendant's requested instruction No. 2 includes reference to a cow being intentionally turned loose on the highway. No such question was involved here. The applicable substance of requested instruction No. 3 is included in the instructions given by the court. Error may not be predicated upon refusal to give tendered instructions which involve issues not included in the evidence or where the substance of the requested instruction has been covered by instructions given.

An insurance adjuster was subpoenaed by plaintiff. Defendant claims this was misconduct. Before the trial started defendant's counsel made a record before the court and stated that he expected to move for a mistrial if any effort was made to inject the question of insurance into the lawsuit. Plaintiff's counsel stated on the record that defendant, on discovery proceedings, had denied that any of his cattle had been struck on the highway in 20 years. The subpoena duces tecum required the witness to bring with him certain records bearing upon that question. The witness was advised to stay in the clerk's office. He was seen by two or three jurors who knew him. He was not called as a witness, the evidence referred to having been given by other witnesses. Under the circumstances it does not appear that the question of insurance was placed before the jury. In any event, defendant did not move for a mistrial.

Defendant claimed misconduct on the part of the court. A review of the record shows that the court did no more

than to require the attorneys to try the lawsuit with professional fairness and without complaining of the court's rulings to this end. The court's handling of the situation was wholly proper. Again, no motion was made for a mistrial.

A party may not proceed with trial without objection, speculate on the outcome of the jury's verdict and, if unfavorable, obtain a reversal on a ground upon which he might have, but did not, move for a mistrial at the time.

No error having been committed by the trial court, the judgment and verdict are affirmed.

AFFIRMED.