FRANCES BLACKBIRD, PERSONAL REPRESENTATIVE OF THE ESTATE
OF CLAUDE R. BLACKBIRD, DECEASED, APPELLANT, V. SDB
INVESTMENTS ET AL., APPELLEES.

541 N.W.2d 25

Filed December 22, 1995.   No. S-94-002.

D.C. Bradford, of Bradford, Coenen & Welsh, for appellant.

Terry K. Gutierrez, of Schmid, Mooney & Frederick, P.C., for appellees SDB Investments and Beals Realty.

Alan M. Thelen, Assistant Omaha City Attorney, for appellee City of Omaha.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

CONNOLLY, J.

Frances Blackbird, mother of, and personal representative of the estate of, Claude R. Blackbird, brought this wrongful death action against the defendants, SDB Investments, Beals Realty, and the City of Omaha, alleging their negligence caused her son's death. The district court for Douglas County sustained the defendants' motions for summary judgment. Under the authority granted to us by Neb. Rev. Stat. § 24–1106 (Cum. Supp. 1994) to regulate the caseloads of the appellate courts of this state, we remove the appeal to this court. We affirm the district court's finding that there was no genuine issue of material fact as to any issue raised by the plaintiff. We therefore affirm.

## ASSIGNMENT OF ERROR

The plaintiff alleges the district court erred in granting summary judgment because material facts exist in the record requiring that the issues of negligence and causation be submitted to the finders of fact.

## SCOPE OF REVIEW

Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from

those facts and that the moving party is entitled to judgment as a matter of law. *Poppleton v. Village Realty Co.*, 248 Neb. 353, 535 N.W.2d 400 (1995); *Krohn v. Gardner*, 248 Neb. 210, 533 N.W.2d 95 (1995); *Walpus v. Milwaukee Elec. Tool Corp.*, 248 Neb. 145, 532 N.W.2d 316 (1995).

The party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that if the evidence presented for summary judgment remains uncontroverted, the moving party is entitled to judgment as a matter of law. *Poppleton v. Village Realty Co., supra*; *Krohn v. Gardner, supra*; *Keefe v. Glasford's Enter.*, 248 Neb. 64, 532 N.W.2d 626 (1995). After the moving party has shown facts entitling it to a judgment as a matter of law, the opposing party has the burden to present evidence showing an issue of material fact which prevents judgment as a matter of law for the moving party. *Krohn v. Gardner, supra*; *Molt v. Lindsay Mfg. Co.*, 248 Neb. 81, 532 N.W.2d 11 (1995); *Keefe v. Glasford's Enter., supra*.

In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Poppleton v. Village Realty Co., supra*; *Krohn v. Gardner, supra*; *Walpus v. Milwaukee Elec. Tool Corp., supra*.

## BACKGROUND

On April 4, 1991, Blackbird fell to his death from a second-floor balcony of the Hamilton Terrace Apartments located at 210 South 24th Street in Omaha, Nebraska. The plaintiff brought this action against SDB Investments, the owner of the property; Beals Realty, the manager of the property; and the City of Omaha for the wrongful death of her son.

The record contains the deposition testimony of only one eyewitness to the accident—Alvin Norman. He testified that at approximately 8:30 a.m., on April 4, 1991, Blackbird, Norman, and others went to visit one Chris Romero, who lived at the Hamilton Terrace Apartments. Upon arrival, the group joined other friends in drinking beer on the second-floor

balcony along the north side of the apartment building.

Immediately prior to the accident, while standing on the second-floor balcony, Norman and Blackbird engaged in a "spitting contest." They were spitting toward the apartment building into a shaft between the building and the south edge of the north balcony. Between the balcony and the shaft was a pair of iron railings, affixed to the side of the building, one above the other. The height of the topmost rail was almost 5 feet 6 inches.

At one time during the spitting contest, Blackbird, a 300-pound man, put both hands on the top rail of the upper railing and put his right foot on the top rail of the lower railing. He leaned back, extended his arms, gathered spit in his mouth, and then jerked himself forward, taking his left foot off the ground and putting all of his weight upon his right foot on the lower railing, so that he could lean over the top rail to spit. When he came forward, the lower railing broke off from the side of the building, he flipped over the upper railing, and he fell approximately 24 feet onto a concrete stairwell, causing his death.

Prior to Blackbird's death, city inspectors discovered numerous code violations in the apartment building and were in the process of condemning the building pursuant to chapter 43 of the Omaha Municipal Code. However, the iron railings over which Blackbird fell were not cited as a code violation and were not a focus of the condemnation proceedings. A condemnation hearing was set by the City of Omaha for December 19, 1990, but was continued until a later date on three separate occasions. The latest continuance was granted March 28, 1991, just 7 days before Blackbird's death. As a result, no hearing was ever conducted.

It is undisputed that the defendants did not repair the property or vacate the premises prior to Blackbird's death. In her third amended petition, the plaintiff alleged that Blackbird fell over a "wooden guard railing . . . on the north side of the balcony." The petition further alleged that a proximate cause of the injury and death to Blackbird consisted of one or more of the following acts of negligence by each of the defendants: "(a) In failing to take the necessary action to cause the repair of said

dangerous condition; (b) By failing to properly and adequately warn Mr. Blackbird of said dangerous condition."

The district court for Douglas County granted the defendants' motions for summary judgment finding that the plaintiff failed to raise a genuine issue of material fact as to any issue. The plaintiff appeals.

## ANALYSIS

### DEFECTS IN PLEADINGS

The plaintiff alleges that the trial court erred in granting summary judgment because material facts exist in the record requiring that the issues of negligence and causation be submitted to the finders of fact. As stated, in her third amended petition, the plaintiff alleged incorrectly, albeit before any meaningful discovery, that Blackbird fell over a wooden guardrail on the north side of the balcony. However, the evidence shows that Blackbird fell over an iron railing on the south side of the north balcony.

An appellate court is obligated to dispose of cases on the basis of the theory presented by the pleadings on which the case was tried. *Ashland State Bank v. Elkhorn Racquetball, Inc.*, 246 Neb. 411, 520 N.W.2d 189 (1994); *Wilson v. Misko*, 244 Neb. 526, 508 N.W.2d 238 (1993). However, any error or defect in the pleadings which does not affect the substantial rights of the adverse party must be disregarded. *Florist Supply of Omaha v. Prochaska*, 244 Neb. 776, 509 N.W.2d 209 (1993).

Although the allegations contained in the plaintiff's petition incorrectly focus on a wooden guardrail, the theory of the case advanced on summary judgment focused on the iron railings Blackbird actually fell over. The defendants presented deposition testimony on the condition of the iron railings. As a result, this defect in the pleadings will not be considered because it did not affect any substantial rights of the defendants.

### FAILURE TO REPAIR SAID DANGEROUS CONDITION

The plaintiff alleged in her petition that the defendants were negligent in failing to take the necessary action to cause the repair of said dangerous condition. However, the defendants put on evidence that the iron railings over which Blackbird fell were

not defective and did not present a dangerous condition. The evidence presented showed that the iron railings were never the subject of any code violation citations by the City of Omaha. In fact, a condemnation inspector, Gary Bengtson, examined the iron railings in October 1990, prior to the accident. He found no problems with the iron railings, found "no damage done to them," and found that they were "tight" and "in place." Ken Taylor, then supervisor of code and condemnation for the City of Omaha planning department, noted that all of the iron railings were attached to the building and did not recall any iron railings missing. Norman testified that prior to the accident he felt the top railing and it was secure.

Thus, the defendants met their burden of producing sufficient evidence that the iron railings were not defective by demonstrating that, if the evidence remains uncontroverted, they are entitled to a judgment as a matter of law. As a result, the burden then shifted to the plaintiff to present evidence showing an issue of material fact which would prevent summary judgment for the defendants. See, *Krohn v. Gardner*, 248 Neb. 210, 533 N.W.2d 95 (1995); *Molt v. Lindsay Mfg. Co.*, 248 Neb. 81, 532 N.W.2d 11 (1995); *Keefe v. Glasford's Enter.*, 248 Neb. 64, 532 N.W.2d 626 (1995).

In the instant case, the plaintiff failed to present any evidence of negligence by the defendants that led to Blackbird's death. The only evidence presented by the plaintiff was that the railing came off when Blackbird jerked forward on it. There was no evidence that there was any defect in the iron railing or in the way the iron railing was fastened to the building, that the City of Omaha conducted any improper inspections, that the inspection should have been conducted differently, or that the defendants failed to meet any recognized standards. Thus, no issue of material fact was presented which would have prevented summary judgment. As a result, we find the trial court did not err in granting summary judgment as to the plaintiff's allegation that the defendants were negligent in failing to repair the railings.

### FAILURE TO WARN OF SAID DANGEROUS CONDITION

The plaintiff next alleged that the defendants were negligent

in failing to properly and adequately warn Blackbird of said dangerous condition. A licensee is defined as a person who is privileged to enter or remain upon the premises of another by virtue of the possessor's express or implied consent, but who is not a business visitor. *Wiles v. Metzger*, 238 Neb. 943, 473 N.W.2d 113 (1991); *Roan v. Bruckner*, 180 Neb. 399, 143 N.W.2d 108 (1966). A social guest is a licensee. *Guenther v. Allgire*, 228 Neb. 425, 422 N.W.2d 782 (1988). Although the third amended petition does not allege that Blackbird was a licensee, the deposition testimony indicates that he was a licensee.

In *Guenther v. Allgire*, 228 Neb. at 428-29, 422 N.W.2d at 785, this court stated:

> The duty of [an owner or occupant of a premises is] only to refrain from injuring . . . a licensee by willful or wanton negligence or designed injury, or to warn him as a licensee of a hidden danger or peril *known* to the owner but unknown or unobservable by the licensee, who is required to exercise ordinary care. [Citation omitted.] In order for an action to be willful or wanton, the evidence must prove that a defendant had *actual* knowledge that a danger existed and that the defendant *intentionally* failed to act to prevent harm which was reasonably likely to result. The term imparts knowledge and consciousness that injury is likely to result from the act done or the omission to act, and a constructive intention as to the consequences. [Citation omitted.]

> To constitute willful negligence the act done or omitted must be intended or must involve such reckless disregard of security and right as to imply bad faith. Wanton negligence has been said to be doing or failing to do an act with reckless indifference to the consequences and with consciousness that the act or omission would probably cause serious injury.

(Emphasis in original.) See, also, *Wiles v. Metzger, supra.*

In the instant case, we find that no duty to warn arose. The evidence shows that there was no genuine issue of material fact as to any defects in the iron railings, and thus, the defendants could not have known of any hidden peril or danger associated

with the iron railings. As a result, we conclude the trial court did not err in granting summary judgment for the defendants on the plaintiff's allegation of negligent failure to warn.

## CONCLUSION

Even when considering the evidence in a light most favorable to the plaintiff, we find there was no genuine issue of material fact as to any issue raised by the plaintiff. Accordingly, we affirm the district court's decision granting the defendants' motions for summary judgment.

AFFIRMED.