TIMOTHY W. HAND, APPELLANT, V. ELDON STARR, APPELLEE.

550 N.W.2d 646

Filed June 28, 1996.   No. S-94-688.

G. Peter Burger, of Burger & Bennett, P.C., and Blaine T. Gillett, of Ruff, Nisley & Lindemeier, for appellant.

Marvin O. Kieckhafer and William M. Wroblewski, of Kay & Kay, for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

CAPORALE, J.

In this negligence action, the plaintiff-appellant, Timothy W. Hand, seeks to recover for injuries he suffered when the tractor-trailer he was driving collided with a cow owned by the defendant-appellee, Eldon Starr. The district court granted Starr's motion for summary judgment and dismissed Hand's

action. Hand thereupon appealed to the Nebraska Court of Appeals, asserting that the district court erred in so ruling. The Court of Appeals affirmed, and Hand successfully sought further review by this court. See *Hand v. Starr*, 96 NCA No. 2, case No. A-94-688 (not designated for permanent publication). Inasmuch as a question of material fact exists, we now reverse the judgment of the Court of Appeals and remand the cause with direction.

The scope of our review is determined by the rule that summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Mahlin v. Goc*, 249 Neb. 951, 547 N.W.2d 129 (1996).

With that in mind, we turn our attention to the relevant facts. At approximately 9:30 p.m. on April 2, 1990, Hand was driving a tractor-trailer owned by Amsberry Trucking Company, Inc., northbound on U.S. Highway 83 at a speed of 55 miles per hour, when he collided with Starr's black cow. The weather and visibility were clear, and the headlights of the vehicle were turned on. Hand did not see the cow until he collided with it while it was in his path of travel. He lost control of the vehicle, which rolled 3½ times before coming to rest. As a result, Hand was injured.

The cow had been purchased by Starr in March 1990. A few days prior to April 2, the cow was in Starr's north pasture among a herd of approximately 150 cattle. Starr ranched over 18,000 acres and did not check his cattle on a daily basis. He maintained that although he had two full-time employees at the time, with an operation of that size, time would not permit the daily checking of his cattle.

The north pasture is divided into two sections which are enclosed by three- and four-wire barbed wire fences. Starr had not seen any evidence or received any information regarding damage to the north pasture fences.

Sometime during the evening of April 2, 1990, Starr was informed by the "Scrantons" of the Bill Scranton ranch that the subject cow was in one of their pastures among their herd

of cattle. The cow was last seen alive at the Scranton ranch at 6 o'clock the evening of the call. A brand inspector for the State of Nebraska also called Starr and told him that Starr's brand had been identified on a cow found at the Scranton ranch.

The Scranton ranch is located approximately 12 to 15 miles from the Starr ranch, approximately 1 mile west of Highway 83, and approximately 4 miles from the site of the collision; the subject Scranton pasture is enclosed by three- or four-wire barbed wire fences. Starr stated in his affidavit that he had no reason to believe or expect that the cow would escape from the confines of the Scrantons' pasture. Nor did he have an explanation as to how or why the cow got out of his pasture, other than stating, "The cow would have had to have gone berserk to have traveled, you know, through that many fences, crossed what we call the Dismal River."

In the afternoon of April 3, 1990, Starr took his horse trailer, a pickup, and a four-wheeler and went to the Scranton ranch to look for his cow, but was unable to locate it. The following day, Starr again went to the Scranton ranch to look for the cow, and was again unsuccessful. On April 5, Starr learned for the first time that the cow had been killed in the collision. Starr then examined his north pasture fences and found no problem with them. None of his other animals were out.

In order to succeed in an action based on negligence, a plaintiff must establish the defendant's duty not to injure the plaintiff, a breach of that duty, proximate causation, and damages. *Hill v. City of Lincoln*, 249 Neb. 88, 541 N.W.2d 655 (1996); *Anderson/Couvillon v. Nebraska Dept. of Soc. Servs.*, 248 Neb. 651, 538 N.W.2d 732 (1995). The owner of domestic animals has the duty to exercise ordinary care to confine his or her livestock to prevent them from being unattended upon the public highway. The principal test is whether one should reasonably have foreseen that any of the livestock would be upon the highway and the occurrence of such an accident; if the owner knows or, in the exercise of ordinary diligence, should know that any of the livestock are unattended upon the highway, it is the owner's duty to exercise ordinary

care to round them up and confine them. *Dizco, Inc. v. Kenton*, 210 Neb. 141, 313 N.W.2d 268 (1981). See *Traill v. Ostermeier*, 140 Neb. 432, 300 N.W. 375 (1941).

The district court, in granting Starr summary judgment, found that Starr had not been negligent as a matter of law, or, in other words, that he had not breached this duty.

In support of that ruling, Starr points out that it is undisputed that his fences were in good repair. That may be so, but the fact is that the cow nonetheless escaped, and Starr was apprised of that fact before the accident occurred. Indeed, Starr was made aware of the fact that the escaped cow traveled a distance of 12 to 15 miles to the Scrantons' pasture. While Starr stated in his affidavit that he had no reason to believe or expect that the cow would escape from the confines of the Scrantons' pasture, it could be inferred that if the cow was able to get onto the Scrantons' land, it certainly could get off of it by the same means. Although the Scranton ranch was 1 mile from the highway and 4 miles from the accident scene, a reasonable person might well anticipate that a cow which had already traveled 12 to 15 miles in getting to the Scranton ranch could travel a few more miles onto a public highway.

In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Gordon v. Connell*, 249 Neb. 769, 545 N.W.2d 722 (1996); *Elliott v. First Security Bank*, 249 Neb. 597, 544 N.W.2d 823 (1996); *Zion Wheel Baptist Church v. Herzog*, 249 Neb. 352, 543 N.W.2d 445 (1996). The question is not how a factual issue is to be decided, but whether any real issue of material fact exists. *Kocsis v. Harrison*, 249 Neb. 274, 543 N.W.2d 164 (1996); *Oliver v. Clark*, 248 Neb. 631, 537 N.W.2d 635 (1995); *Grover, Inc. v. Papio-Missouri Riv. Nat. Res. Dist.*, 247 Neb. 975, 531 N.W.2d 531 (1995).

Here, an issue of material fact exists as to whether Starr was negligent in failing to timely round up and confine his cow once he had been apprised that it had escaped his pasture and traveled 12 to 15 miles. Accordingly, it was erroneous for the district court to grant Starr's motion for summary judgment.

The judgment of the Court of Appeals is thus reversed and the cause remanded thereto with the direction that it reverse the judgment of the district court and remand the cause to that court for further proceedings.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.